**Stephen P. Rickles,** OSB #793613
   steve@rickles-law.com
**Martin W. Jaqua,** OSB #860528
   mjaqua@rickles-law.com
THE RICKLES LAW FIRM, PC
1839 NW 24th Avenue
Portland, Oregon 97210-2537
Telephone: 503.229.1850
Facsimile: 503.229.1856
   Attorneys for Defendants George Fox
   University, Boughton, Casey, Bates,
   Sanders, Haberly, Taylor, Johnstone,
   Pothoff and Taylor

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

SAMUEL W. WANI,

              Plaintiff,

     v.

GEORGE FOX UNIVERSITY,
PROVIDENCE MEDICAL GROUP, DR.
THOMAS CROY MD, DOMINICK FIX-
GONZALEZ, GREGG BOUGHTON,
CHRIS CASEY, JOHN BATES, IAN
SANDERS, GABE HABERLY, CRAIG
TAYLOR, DAVE JOHNSTONE, MARK
POTHOFF, SARAH TAYLOR

              Defendants.

Case No. 3:17-CV-1011-YY

GEORGE FOX DEFENDANTS' RULE
12 MOTIONS AGAINST COMPLAINT

## TABLE OF CONTENTS

**LR 7.1(a) Certification** ......................................................... 2

**MOTION NO. 1** (to dismiss "Claim 1" – hostile environment) ............................. 2
   A.   Introduction and Summary of Plaintiff's Key Allegations. ......................... 3
   B.   General Standards for Evaluating *Pro Se* Complaints and Related
       Exhibits. ................................................................. 5
   C.   General Pleading Standards for "Hostile Environment" Claims. ............. 7
   D.   Standards for Evaluating Allegations Regarding the Effectiveness of the
       Responses to Hostile Environment Complaints. ................................ 13

**MOTION NO. 2** (to dismiss Claims 2 and 3 – denial of medical treatment)....... 18
   A.   Plaintiff has not Alleged a Legally Recognized "Denial of Medical
       Treatment" Claim. ..................................................... 19
   B.   Plaintiff has not Properly Alleged a Negligent Misdiagnosis Claim Against
       the George Fox Defendants. ............................................. 20

**MOTION NO. 3** (to dismiss Claim 5 – alleged HIPAA violations) ..................... 22

**MOTION NO. 4** (to dismiss Claim 6 – breach of contract) ................................ 24

**MOTION NO. 5** (striking references to 20 USC § 1703) .................................... 27
   A.   Introductory Arguments in Support of all Motions to Strike. .................. 28
   B.   Specific Arguments in Support of Motion No. 5. .................................. 29

**MOTION NO. 6** (striking all references to 42 USC § 2000a) ............................ 30

**MOTION NO. 7** (striking all references to 18 USC § 347) .................................. 31

**MOTION NO. 8** ((striking all references to 31 USC § 3729) .............................. 32

**MOTON NO. 9** (striking all references to 42 USC § 1320d-6(a))....................... 33

**MOTION NO. 10** (striking all references to 41 USC § 6503) ............................. 34

**MOTION NO. 11** (striking all references to 42 USC § 1983) ............................. 35

**MOTION NO. 12** (striking all references to "Title IX") ......................................... 35

TABLE OF AUTHORITIES

**Cases**

Acrymed, Inc. v. ConvaTek, 317 F Supp 2d 1204, 1215, (D Or 2004) .............. 24
American Title Ins. Co. v. Lacelaw Corp., 861 F2d 224, 226 (9th Cir 1988)......... 7
Bernsten v. Dollar Tree Stores, Inc., 2007 WL 756744 (D Or 2007).................. 12
Board of Trustees v. Dept. of Human Rights, 159 Ill. 2d 206, 636 NE 2d 528
   (1994)............................................................................................. 31
C.O. v. Portland Public Schools, 406 F Supp 2d 1157, 1172 (D Or 2012) ........ 30
Clark County Sch. Dist. v. Breeden, 532 US 268, 271, 121 S Ct 1508, 149 L Ed
   2d 509 (2001).............................................................................. 8, 11
Davis v. Monroe County Bd. of Education, 526 US 629, 119 S Ct 1661, 143 L Ed
   2d 839 (1999)................................................................................ 8, 9
Denton v. International Health & Life, 279 Or 444, 528 P2d 546 (1974) ........... 27
Employers Insurance of Wausau v. Tektronix, Inc., 211 Or App 485, 502-03, 156
   P3d 105 (2007) ............................................................................... 25
Faragher v. City of Boca Raton, 524 US 775, 788, 141 L Ed 2d 662, 119 S Ct
   2275 (1988)..................................................................................... 11
Harris v. Forklift Systems, Inc., 510 US 17, 21, 114 S Ct 367 (1993) ................ 11
Harris v. Forklift Systems, Inc., 510 US 17, 22-23, 114 S Ct 367 (1993)............. 9
Harris v. Forklift, supra 510 US at 22-23 ............................................... 12
Hollis v. Ferguson, 244 Or 415, 421, 417 P2d 989 (1966)................................ 21
Jernigan v. Alderwoods Group, Inc., 489 F Supp 2d 1180, 1198-99
   (D Or 2007) .......................................................................... 10, 16, 17
Jones v. American Airlines, Inc., 57 F Supp 2d 1224, 1226 (D Wyoming 1999). . 7
Kansas Comm. on Human Rights v. Topeka Unified School Dist., 243 Kan 137,
   755 P2d 539 (1988) ......................................................................... 31
Meritor Savings Bank, FSB v. Vinson, 477 US 57, 106 S Ct 2399, 91 L Ed 2d 49
   (1986)............................................................................................ 12
Oregon Southwest, LLC v. Kvaternik, 214 Or App 404, 414, 164 P3d 1226
   (2007)............................................................................................ 25
Otsyula v. Intel Corporation, 2007 WL 505691 (D Or 2007) .............................. 12
Philips v. Clark County School District, et al, 2011 WL 4343979 (D Nevada
   2011).............................................................................................. 26
Quint v. Cox, 348 F. Supp. 2d 1243, 1245 (D Kan 2004) ..................................... 7
Ramirez v. Petrillo, 2012 WL 12887631 at *2 (D Or 2012), aff'd 559 Fed Appx
   651 (9th Cir 2014) ............................................................................. 6
Repp v. Hahn, 45 Or App 671, 609 P2d 1980) .................................................. 21
Skidmore v. Precision Painting & PKG., Inc., 188 F3d 606, 615 (5th Cir 1999) . 10
Smallwood v. NCsoft Corp., 730 F Supp 2d 1213, 1221 (D Hawai'i 2010)........... 7
Swenson v. Potter, 271 F3d 1184, 1192 (9th Cir 2001)..................... 10, 14, 15, 16

Webb v. Smart Document Solutions, LLC, 499 F3d 1078, 1082 (9th Cir 2007) . 23
Wilhelm v. Rotman, 680 F3d 1113, 1122 (9th Cir 2012)..................................... 19
Willard v. Hutson, 234 Or 148, 165, 378 P2d 966 (1963) .................................. 20

**Statutes**
18 USC § 1347 ................................................................................... 31, 32
20 USC § 1701(a)(1) .................................................................................. 29
20 USC § 1703 ................................................................................... 27, 29
20 USC §1681 ........................................................................................... 36
31 USC § 3729 ........................................................................................... 32
31 USC §3729 ............................................................................................ 32
41 USC § 6502 ........................................................................................... 34
41 USC § 6503 ........................................................................................... 34
42 USC § 2000a ................................................................................... 30, 31
42 USC §1320d-6(a) ............................................................................ 23, 33
42 USC §1983 ............................................................................................ 35

**Rules**
Fed. R. Civ. P. 12(b)(6) ................................................................... 2, 21, 25, 27
Fed. R. Civ. P. 12(f)(2) .............................................. 31, 34, 36, 37, 38, 39, 40, 41

## LR 7.1(a) Certification

The undersigned counsel for the moving defendants hereby certifies that between September 21 and 26, 2017, he actually conferred and attempted to confer with plaintiff by formal correspondence, multiple emails, and two telephone conferences regarding the following motions, and was repeatedly advised that plaintiff will not voluntarily dismiss, clarify, or strike any of the claims and allegations moved against below.

## MOTION NO. 1

### (to dismiss "Claim 1" – hostile educational environment)

Defendants George Fox University ("George Fox"), Gregg Boughton, Chris Casey, John Bates, Ian Sanders, Gabe Haberly, Craig Taylor, Dave Johnstone, Mark Pothoff and Sarah Taylor (referred to collectively as the "George Fox Defendants") hereby move the court for an order dismissing, pursuant to Fed. R. Civ. P. 12(b)(6), the separate claim for relief appearing at page 9 of the Complaint, specifically in paragraph 1 under the "Statement of Claim" heading, on the ground that it fails to state a claim upon which relief can be granted as to any of the George Fox Defendants.  (The claim reflected in that paragraph will be referred to below as "Claim 1," and the claims reflected in the subsequently numbered paragraphs of the Statement of Claim section will be designated similarly herein.)

## Supporting Legal Memorandum

A.    <u>Introduction and Summary of Plaintiff's Key Allegations.</u>

While Motion No. 1 is directed solely to plaintiff's Claim 1, the "cyberbullying" claim, Motion No. 1 and all of the following motions, and likely every remaining step in the litigation of this case to a conclusion on the merits, implicate the difficult threshold task of simply identifying what specific claims and which specific legal theories the *pro se* plaintiff is attempting to pursue.

However, when the Complaint and its various attachments are read as a whole from a factual perspective, it is reasonably clear that all of the claims in this case arise from a handful of key facts and two discrete incidents occurring roughly within the two-week time frame beginning on August 20, 2015, and ending on September 2 or possibly September 4, 2015.  Because those few basic facts provide a framework for the legal analysis and arguments advanced below, those facts will first be summarized here for the court's convenience.

Plaintiff first alleges that on August 20, 2015, he sustained a thumb injury during a preseason practice of the George Fox intercollegiate football team, sought treatment from the football training staff, and was preliminarily diagnosed as having a sprained thumb.  Plaintiff also alleges that he unsuccessfully requested permission to see an outside physician for a second opinion, that he eventually sought treatment at the Providence Newberg hospital on

September 2, 2015, and was diagnosed by a Providence physician as having a fractured thumb.[1]

The second incident at issue in this case is described by plaintiff as having originated on August 27, 2015, when he allegedly learned from an unidentified source that a football teammate, defendant Dominick Fix-Gonzalez, had posted pictures mocking plaintiff's hairstyle on a social media platform. Plaintiff also alleges that sometime in the afternoon of that same day, he spoke to Mr. Fox-Gonzalez about the offensive post, who then apologized for the post and said he would remove, delete or "take it down." Plaintiff then alleges that, despite receiving that apology from Mr. Fix-Gonzalez, he reported the incident to the football coaching staff on the evening of August 27, later repeated the report to other George Fox staff members, and was eventually interviewed about the incident on September 4, 2015.

Finally, the attachments to plaintiff's Complaint indicate that, due to his combined levels of dissatisfaction with the handling of his thumb injury and the Fix-Gonzalez complaint, he decided to quit the football team and withdraw from George Fox on September 2, 2015, then packed up and moved back to his home in Washington a few days later. Beyond those basic chronological facts,

---

[1] Plaintiff does not allege that the diagnosis or treatment he received at Providence Newberg was incorrect or negligent, and now appears to have agreed to voluntarily dismiss Providence Health System as a defendant in this case.

Page 4 – GEORGE FOX DEFENDANTS' RULE 12 MOTIONS AGAINST COMPLAINT
Z:\CLIENTS\8000\8700.028 - WANI V. GEORGE FOX\PLEADINGS CASE # 1011\RULE 12 MOTIONS AGAINST COMPLAINT.DOC

however, the legal relevance, if any, of plaintiff's remaining allegations about incidents following his withdrawal from George Fox is far from clear.  As a result, those post-withdrawal allegations will not be discussed in more detail here, and will be addressed only in connection with the specific motions to which they arguably relate.

As a final introductory note, the George Fox Defendants generally deny for the record, and in the strongest possible terms, all factual allegations going beyond the objectively verifiable and chronological points outlined above.  As for all other facts, whether merely suggested or expressly alleged by plaintiff, the George Fox Defendants recognize the somewhat liberal consideration afforded *pro se* complaints and complaints challenged by motions brought pursuant to Rule 12(b)(6) and 12(f), and advance the following motions with full reservation of their rights to later challenge, whether by summary judgment or otherwise, the substantive validity of any facts or allegations this court may find to be sufficiently pled for Rule 12 purposes.

B. General Standards for Evaluating *Pro Se* Complaints and Related Exhibits.

Although this court is familiar with the pleading standards implicated by the following motions, particularly the motions to dismiss individual claims for relief, they will nonetheless be set out below for the convenience of the court and to frame the George Fox Defendants' arguments in opposition to the specific claims

and theories suggested in the Complaint.  Specifically, as stated in *Ramirez v. Petrillo*, 2012 WL 12887631 at *2 (D Or 2012), *aff'd* 559 Fed Appx 651 (9th Cir 2014) (memorandum):

> "A court must liberally construe the allegations of a pro se plaintiff and afford the plaintiff the benefit of any doubt.  *Lopez* [*v. Dept. of Health Services*, 939 F2d 881, 883 (9th Cir 1991)].  However, under FRCP 8(a)(2), all complaints must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'  A complaint must 'give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.'  *Conley v. Gibson*, 355 US 41, 47 (1957).  This standard 'does not require "detailed factual allegations,"' but does demand 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'  *Ashcroft v. Iqbal*, 556 US 662, 678 (2009), *quoting Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007).  'A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do.""  *Id.*
>
> "In order to survive a motion to dismiss under FRCP 12(b)(6) for failure to state a claim, 'a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'  *Id., quoting Twombly*, 550 US at 570.  When reviewing a complaint, the court must 'accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party.'  *Knievel v. ESPN*, 393 F3d 1068, 1072 (9th Cir 2005), *citing Cervantes v. United States*, 330 F3d 1186, 1187 (9th Cir 2003)."

In the present case, additional pleading standards are triggered by plaintiff's attachment of 29 pages of documents and exhibits to his written Complaint form, ostensibly in support of the specific claims and allegations described in the Complaint form itself.  "Written documents that are attached to the complaint as an exhibit are considered part of the complaint and may

therefore be considered in connection with a motion to dismiss under Rule 12(b)(6)." *Jones v. American Airlines, Inc.,* 57 F Supp 2d 1224, 1226 (D Wyoming 1999). As further noted in *Smallwood v. NCsoft Corp.,* 730 F Supp 2d 1213, 1221 (D Hawai'i 2010), when dealing with a motion to dismiss a *pro se* case for failure to state a claim, "the court need not accept as true allegations that contradict matters properly subject to judicial notice or allegations contradicting the exhibits attached to the complaint."

The Ninth Circuit has similarly recognized that "a statement in a complaint * * * is a judicial admission * * *." *American Title Ins. Co. v. Lacelaw Corp.*, 861 F2d 224, 226 (9th Cir 1988). And, in *Quint v. Cox*, 348 F. Supp. 2d 1243, 1245 (D Kan 2004), the court held that unverified factual allegations in a *pro se* plaintiff's complaint, including those that alleged key chronological dates, would be deemed the binding admissions of the plaintiff. Under those authorities, the facts plaintiff has provided in the attachments to his Complaint, and which either squarely refute or shed additional light on the conclusory allegations in the Complaint form itself, may properly be considered by this court when determining the sufficiency of specific claims for relief and related allegations.

C.    General Pleading Standards for "Hostile Environment" Claims.

When the Supreme Court extended its recognition of hostile environment claims to the educational setting, in *Davis v. Monroe County Bd. of Education,*

526 US 629, 119 S Ct 1661, 143 L Ed 2d 839 (1999),[2] it effectively adopted the pre-existing standards for claims arising under statutes prohibiting discriminatory harassment in employment, also known as "hostile work environment" claims. But, in the narrow context of claims arising from alleged harassment by a plaintiff's fellow student, the court made clear that liability will only exist "where the [defendant] is deliberately indifferent to known acts of student-on-student * * * harassment and the harasser is under the school's disciplinary authority." *Id.* at 1673.

However, in both the employment and educational settings federal courts impose high standards when evaluating the question of whether the conduct at issue, even if proven to have occurred, is sufficiently "hostile" to support a claim. For example, in *Clark County Sch. Dist. v. Breeden*, 532 US 268, 271, 121 S Ct 1508, 149 L Ed 2d 509 (2001) the United States Supreme Court held that: "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."  It has similarly held that statutes prohibiting discrimination in

---

[2] The *Davis* court specifically held that such claims were viable under 20 USC §1681(a), part of the "Title IX" statutes that prohibit *sexual* discrimination by educational recipients of federal funding.  As held in cases such as *Doe v. Gladstone School District,* * 14 (D Or 2012), the same standards are typically applied to claims alleging *racial* harassment by educational recipients of federal funding, as prohibited by 42 USC §2000(d). However,  while the latter theory might apply to George Fox University, such claims are not viable as against individual employees of a "recipient" institution.

employment are violated only when the work place is "permeated with 'discriminatory intimidation, ridicule, and insult'" and not when there is "mere utterance of an * * * epithet which engenders offensive feelings in an employee." *Harris v. Forklift Systems, Inc.*, 510 US 17, 22-23, 114 S Ct 367 (1993).

Similar standards were adopted in *Davis v. Monroe County,* where the Court made clear that in order to be potentially actionable, the alleged harassment must be "so severe, pervasive, and objectively offensive that it can be said to deprive the victims of access to the educational opportunities or benefits provided by the school." *Id.* at 1675. The Court also made clear that "simple acts of teasing and name-calling" will generally not be actionable, even when clearly based on a protected characteristic such as sex or race. *Id.*

More importantly for the purposes of the present case, where plaintiff's own Complaint and its attachments confirm that at most he was offended by a single social media posting by a fellow student, possibly combined with hearsay rumors about one or two related statements, the Supreme Court further explained in *Davis* that single instances of alleged harassment will generally not be sufficient in a hostile educational environment claim, as follows:

> "Although, in theory, a single instance of sufficiently severe one-on-one peer harassment could be said to have such an effect, we think it unlikely that Congress would have thought such behavior sufficient to rise to this level in light of the inevitability of student misconduct and the amount of litigation that would be invited by entertaining claims of official indifference to a single instance of one-

Page 9 – GEORGE FOX DEFENDANTS' RULE 12 MOTIONS AGAINST COMPLAINT

on-one peer harassment.  By limiting private damages actions to cases having a systemic effect on educational programs or activities, we reconcile the general principle that Title IX prohibits official indifference to known peer sexual harassment with the practical realities of responding to student behavior, realities that Congress could not have meant to be ignored."  *Id.* at 1676.

Given the similarly high standard imposed by the Supreme Court for imposing liability on an employer in hostile work environment cases, federal courts have also held that in order to establish such a claim, a plaintiff must establish, among other things, "that her employer knew, or should have known, of the harassment <u>and</u> failed to take prompt remedial action," resulting in additional and similar acts of harassment.  *Skidmore v. Precision Painting & PKG., Inc.*, 188 F3d 606, 615 (5th Cir 1999) (emphasis added)

In other words, even if a plaintiff is able to prove that the allegedly offensive conduct occurred in the workplace and was reported to the employer, the plaintiff still "bears the burden of showing that his employer failed to take effective action," resulting in further instances of harassment.  *Skidmore v. Precision,* 188 F3d at 616.  As similarly explained in *Jernigan v. Alderwoods Group, Inc.,* 489 F Supp 2d 1180, 1198-99 (D Or 2007): "The employer is not, however, liable for conduct of which it is unaware: 'The employer's liability, if any, runs from the time it knew or should have  known about the conduct and failed to stop it.'"  (*citing, Swenson v. Potter,* 271 F3d 1184, 1192 (9th Cir 2001).

The standards for evaluating such claims are demanding.  In order to rise to the level of adversely affecting the terms and conditions of employment, the conduct must be extreme, and not merely rude or unpleasant.  Title VII does not authorize the courts to impose a "general civility code."  *Faragher v. City of Boca Raton,* 524 US 775, 788, 141 L Ed 2d 662, 119 S Ct 2275 (1988).  As the Court emphasized in *Faragher*:  "We have made it clear that conduct must be <u>extreme</u> to amount to a change in the terms and conditions of employment * * *." (emphasis added).

Not all unpleasant conduct creates a hostile work environment.  A plaintiff must show that "the workplace is permeated with discriminatory intimidation, ridicule and insult".  *Harris v. Forklift Systems, Inc.*, 510 US 17, 21, 114 S Ct 367 (1993) (internal quotations omitted).  These standards are designed to "filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, * * * jokes, and occasional teasing." *Faragher, supra*, 524 US at 788.

As the Supreme Court has noted:  "* * * [a] recurring point in our opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment [internal quotations omitted]"  *Clark County School Dist. v. Breeden, supra,* 532 US at 271.  Title VII is violated only when the work

place is "permeated with 'discriminatory intimidation, ridicule, and insult'" and not when there is "mere utterance of an * * * epithet which engenders offensive feelings in an employee." *Meritor Savings Bank, FSB v. Vinson,* 477 US 57, 106 S Ct 2399, 91 L Ed 2d 49 (1986); *Harris v. Forklift, supra* 510 US at 22-23.

Similarly weak claims have been rejected on numerous occasions by the local federal court judges.  For example, in *Bernsten v. Dollar Tree Stores, Inc.*, 2007 WL 756744 (D Or 2007), summary judgment on the racially hostile work environment claim was granted where the evidence showed that the plaintiff, a Native American, was referred to by a supervisor as a "'fat, lazy Indian,'" but that such remarks were made only "'a couple of times.'"  (Slip Op. at p. 6)  In *Otsyula v. Intel Corporation*, 2007 WL 505691 (D Or 2007), summary judgment was granted on the plaintiff's racially hostile work environment claims despite the plaintiff's allegation that terms such as "monkey" and "tribal knowledge" were used by his co-workers to intimidate and harass him on racial grounds.  (Slip Op. at p. 4)  The court then discussed as follows why that evidence was insufficient as a matter of law:

> "Plaintiff's hostile work environment claim also fails because the alleged conduct was not sufficiently severe or pervasive to alter the conditions of plaintiff's employment.  'Altering the conditions of employment' requires an employee to show 'both subjective and objective hostility in the workplace.'  [citation omitted]  Plaintiff's complaints do not approach the level of conduct required by the Ninth Circuit to create a hostile work environment that is sufficiently severe and pervasive."  (*Id.* at * 7)

Page 12 – GEORGE FOX DEFENDANTS' RULE 12 MOTIONS AGAINST COMPLAINT

In the present case, the George Fox Defendants first contend that, regardless of how subjectively offensive the statements and social media postings attributed to Mr. Fix-Gonzalez may have been to the plaintiff, and regardless of whether such conduct also violated George Fox's institutional standards for the behavior of its students, the Complaint in this case simply fails to alleged the requisite level of "hostility," particularly when viewed in the broader context of plaintiff's own complaints when interviewed by George Fox staff.  For that reason alone, neither Claim 1 by itself nor any other portion of plaintiff's Complaint properly states any "hostile educational environment" claim against any of the George Fox Defendants, and should be dismissed pursuant to Rule 12(b)(6).  As explained in the following section, however, the claim is also defective and should be dismissed for reasons unrelated to the alleged severity or hostility of the offensive conduct attributed to Mr. Fox-Gonzalez.

D.    Standards for Evaluating Allegations Regarding the Effectiveness of the Responses to Hostile Environment Complaints.

Nowhere in the Complaint does plaintiff allege that Mr. Fix-Gonzalez continued to post offensive pictures on Instagram or direct other forms of alleged racial harassment towards plaintiff <u>after</u> plaintiff reported his first post to the George Fox football coaches.  For that reason as well, Claim 1 fails to state any

claim against any of the George Fox Defendants, and should be dismissed pursuant to Rule 12(b)(6) on that ground as well.

The Ninth Circuit case that appears to best explain what is and is not required of an employer in response to a complaint of workplace harassment is *Swenson v. Potter, supra,* 271 F3d 1184.  In *Swenson*, the first complaint about the harasser came from a fellow employee, and the supervisor who received that complaint promptly discussed the matter with the alleged offender and instructed him to stay away from the plaintiff.  *Id.* at 1189.  The plaintiff made her own complaint three days later to the human resources department, which investigated further and provided a duplicate warning to the offender.  *Id.*  The alleged offender engaged in no further acts of harassment thereafter, so that the initial investigation and response by the employer succeeded in its intended purpose.

The plaintiff in *Swenson* still argued that she was entitled to prevail on her hostile work environment claim, based on her criticism of the sufficiency of the employer's investigation and its response to the initial complaint.  The plaintiff specifically criticized the speed of the follow-up investigation after the initial contacts and warnings to the alleged offender; the failure to implement formal disciplinary proceedings against him; the specific methods used by the employer in its subsequent investigation after the initial warnings to the offender; and the

employer's eventual decision to separate the plaintiff from the offender by altering their respective workstations, which the plaintiff claimed was still inadequate because they would see each other in the workplace about once a month.

The court ultimately rejected all of those arguments, however, since the bottom line was that the prompt yet informal initial response served its intended purpose by preventing any further, overt incidents of sexual harassment by the alleged offender.  In doing so, the court noted as follows:

> "While we believe that the investigation was competent, it ultimately doesn't matter.  In considering whether the employer's response was appropriate, we consider the overall picture.  Even assuming that the investigation was less than perfect, the Postal Service nonetheless took prompt action to remedy the situation.  The harassment stopped.  The only possible consequence of a better investigation could have been to make out a stronger case for disciplining [the alleged offender].  <u>But the purpose of Title VII is remedial – avoiding and preventing discrimination – rather than punitive.  [Citation omitted]  Failure to punish the accused harasser only matters if it casts doubt on the employer's commitment to maintaining a harassment-free workplace. * * *  Where, as here, the employer takes prompt steps to stop the harassment, liability cannot be premised on perceived inadequacies in the investigation.</u>"  *Id.* at 1197. (emphasis added).

*Swenson v. Potter* is also further significant for its holding that the trial court erred in denying the defendant's motion for judgment in its favor as a matter of law following the jury verdict for the plaintiff.  It reached that conclusion without disputing the evidence presented at the trial court level that the alleged

offender had engaged in a series of offensive sexual overtures and harassing conduct over a number of months before the reported incident.

Therefore, under *Swenson v. Potter,* even if there were evidence of a lengthy period of alleged harassment by an individual before the first report of that conduct reaches the employer (or in this case upper-level George Fox employees), as long as the institutional defendant's response to the report serves the intended purpose of preventing further acts of harassment against the plaintiff, the plaintiff will not be entitled to prevail on a claim against the employer. And this is so regardless of how allegedly inadequate, deficient, slow, clumsy, informal, or undocumented that investigation and response is claimed to be by the plaintiff months or years later.  As long as those alleged deficiencies in the employer's response were not coupled with repeated acts of harassment by the same offender against the same plaintiff, they cannot support a hostile work environment or hostile educational environment claim.

In *Jernigan v. Alderwoods Group, Inc.,* 489 F Supp 2d 1180 (D Or 2007), District Judge Marsh adopted the earlier findings and recommendations of Magistrate Judge Papak and granted summary judgment to the defendant on one of the two plaintiffs' sexual hostile work environment claims.  Although there was evidence that the plaintiff had been subjected to regular sexual harassment by a supervisor over the course of a number of years, once the plaintiff finally

complained to the defendant's human resources department the employer promptly responded and there was no further harassment.  *Id.* at 1190.

Even though the plaintiff also claimed in *Jernigan* that the employer's anti-harassment training was generally deficient, and that its response to the belated complaint was inadequate because it did not adequately publicize the reasons for the eventual termination of the offending supervisor, because no further acts of harassment by that offender occurred after the response to the initial complaint, the deficiencies claimed with the employer's response were viewed as irrelevant. *Id.* at 1197-98.

Together, these authorities confirm that in general, neither subjective criticisms by plaintiffs regarding the sufficiency, timing or degree of detail in the employer's investigation after an initial report of harassment, nor any alleged deficiencies in the severity, formality, or related publicity following its remedial measures, are legally determinative of whether or not a hostile work environment exists.  When there is no recurrence of the conduct by the person complained about after the institutional defendant's response, a plaintiff's criticisms of the response are simply not legally relevant.

In the present case, plaintiff's own attachments confirm that his complaint about Mr. Fix-Gonzalez was first responded to by the football coaching staff, who advised him they had spoken to Mr. Fix-Gonzalez and confirmed that the

offending post or posts had been removed.  The attachments also show the depth of George Fox's prompt, more formal investigation, and the eventual imposition of disciplinary sanctions against Mr. Fix-Gonzalez, albeit after plaintiff had already quit the football team and dropped out of school.  And, if an employer or educational institution was to be held strictly liable if a reasonable investigation and remedial plan proved to be unsuccessful, then the only alternative would be to terminate or expel every employee or student offender immediately upon notice that an inappropriate statement had been made.  That is not the legal standard applicable to the claims against the George Fox Defendants in this case, however, and Claim 1 must be dismissed against them.

## MOTION NO. 2

### (to dismiss Claims 2 and 3 – denial of medical treatment)

The George Fox Defendants next move the court for an order dismissing, pursuant to Fed. R. Civ. P. 12(b)(6), the seemingly redundant claims for relief appearing at pages 9 and 10 of the Complaint form, specifically paragraphs 2 and 3 under the "Statement of Claim" heading, on the ground that they fail to state a claim upon which relief can be granted as to any of the George Fox Defendants.

/ / /

/ / /

## Supporting Legal Memorandum

A.    Plaintiff has not Alleged a Legally Recognized "Denial of Medical Treatment" Claim.

The legal theory most closely associated with the conclusory factual allegations in Claim 2 and Claim 3 – at least to the extent they attempt to seek damages based on the "denial" of medical treatment or a "refusal" to refer plaintiff to a private physician – is the theory commonly associated with a very different type of *pro se* plaintiff, specifically an inmate of a federal or state correctional institution.  In that narrow setting only, where the inmate is necessarily confined by a governmental defendant and dependent entirely on the governmental defendant for all necessary medical care, federal law recognizes claims for damages due to the "deliberate indifference" in the refusal to provide necessary care.  *See, e.g., Wilhelm v. Rotman,* 680 F3d 1113, 1122 (9th Cir 2012)

However, the George Fox Defendants are unaware of any federally recognized, parallel claim by an adult student against a *private educational* institution or its employees, of the type plaintiff has apparently attempted to assert here.  While such a claim might arguably be viable under an extraordinary set of facts, namely one in which it is specifically alleged that the educational institution physically confined its students in a prison-like setting, no such facts are specifically alleged or even suggested anywhere in plaintiff's Complaint.  As the attachments to plaintiff's own Complaint confirm, specifically at page 7, he

Page 19 – GEORGE FOX DEFENDANTS' RULE 12 MOTIONS AGAINST COMPLAINT

apparently had his own vehicle during his brief attendance at George Fox and moved into private, off-campus housing on August 24, 2015, after the first week or so of practice.

Furthermore, plaintiff's own Complaint also shows at pages 9 and 17 that on September 2, 2015, he did in fact seek treatment at the Providence Newberg hospital, presumably without the knowledge or express approval of anyone affiliated with George Fox, just like any private citizen would. In short, there are simply no facts alleged to refute the presumption that, as long as he was not physically attending practice or classes, plaintiff was free to go anywhere he chose and see any private medical provider he thought might be able to provide better treatment or a different diagnosis than the George Fox training staff. When so viewed, there are simply no facts alleged under which plaintiff would be able to properly assert some kind of civil equivalent of a "deliberate indifference" claim in relation to his thumb injury.

B.    Plaintiff has not Properly Alleged a Negligent Misdiagnosis Claim Against the George Fox Defendants.

To the extent plaintiff is also attempting to assert some kind of negligence claim based on the purported misdiagnosis of his thumb injury, the Supreme Court of Oregon has held that "a wrong diagnosis to be actionable must not only be negligent, but must also be followed by the improper treatment of the injury." *Willard v. Hutson,* 234 Or 148, 165, 378 P2d 966 (1963). In *Hollis v. Ferguson,*

244 Or 415, 421, 417 P2d 989 (1966), after quoting the above statement from *Willard*, the court added that: "This is merely an application of the general rule principle that in order for negligence to be actionable it must have caused an injury.   If an incorrect and negligent diagnosis results in no injury it is not actionable."

As explained in more detail in *Repp v. Hahn,* 45 Or App 671, 609 P2d 1980), an alleged misdiagnosis or failure to diagnose a pre-existing medical condition does necessarily cause any actionable harm.   Instead, as explained in *Repp,* actionable harm occurs only when, as a direct result of the misdiagnosis, the plaintiff's condition worsens in a way that would have been avoidable if a proper diagnosis and resulting course of treatment had occurred earlier.

In the present case, however, while plaintiff alleges that his thumb was broken on August 20, 2015, he also alleges that his only diagnosis remained to be that of a broken thumb when he sought treatment at Providence Newberg on September 2, 2015.   And, as shown by the "MultiCare" facility record found on the bottom half of page 17 of the attachments to plaintiff's Complaint, the broken thumb was described as "healing well" when plaintiff sought treatment from his doctors in Washington on September 15, 2015.

In short, while plaintiff may continue to claim that the tentative thumb sprain diagnosis he received from the George Fox training staff was so wrong as

to constitute actionable negligence, under whatever the corresponding standard of care may be, he fails to allege anywhere what different course of *treatment* he would have been provided upon receiving the diagnosis he wanted.  Nor does plaintiff allege anywhere that the alleged delay in the receipt of the thumb fracture diagnosis caused any exacerbation of the consequences of the original injury.  At most, plaintiff seems to make some kind of unstated connection between the allegedly delayed diagnosis and his surgery a year later, but plaintiff is presumably not qualified to express a professional medical opinion on that causal connection, and fails to cite any qualified source for such an opinion if held by someone else.  For those reasons as well, Claims 2 and 3 simply fail to properly state any negligence-based claim against any of the George Fox Defendants in relation to the thumb injury.

## MOTION NO. 3

### (to dismiss Claim 5 – alleged HIPAA violations)

The George Fox Defendants next move the court for an order dismissing, pursuant to Fed. R. Civ. P. 12(b)(6), the apparent claim for relief appearing at page 11 of the Complaint form, specifically paragraph 5 under the "Statement of Claim" heading, on the ground that it fails to state a claim upon which relief can be granted as to any of the George Fox Defendants.

## Supporting Legal Memorandum

The sparse and conclusory allegations contained within Claim 5 itself fail to identify the specific "HIPAA" statute relied upon by plaintiff.  However, his citation to 42 USC §1320d-6(a) on page 7 of his Complaint, under the "Federal Question" jurisdiction section, combined with allegations purporting to support claims related to plaintiff's thumb injury and its treatment, confirm that plaintiff is seeking to hold one or more of the George Fox Defendants liable for money damages based on their claimed violation of that statue.

The problem with that theory is that neither §1320d-6(a), nor any other section of the "HIPAA" statutes, create a civil right of action by a private citizen for money damages allegedly caused by a violation of HIPAA's privacy and disclosure provisions.  *Webb v. Smart Document Solutions, LLC,* 499 F3d 1078, 1082 (9th Cir 2007).   Section 1320d-6(a) instead allows only the *criminal* prosecution of persons who allegedly violate HIPAA provisions, which the plaintiff in this case is clearly not authorized to initiate in his own name.  For that simple reason, Claim 5 should be dismissed with prejudice for failure to state any civil claim for damages against any of the George Fox Defendants.

/ / /

/ / /

/ / /

# MOTION NO. 4

(to dismiss Claim 6 – breach of contract)

The George Fox Defendants next move the court for an order dismissing, pursuant to Fed. R. Civ. P. 12(b)(6), the apparent claim for relief appearing at page 11 of the Complaint form, specifically paragraph 6 under the "Statement of Claim" heading, on the ground that it fails to state a claim upon which relief can be granted as to any of the George Fox Defendants.

## Supporting Legal Memorandum

Plaintiff's Claim 6, unlike the others discussed above, is at least one that seems on its face to plainly identify a recognized theory of recovery, namely breach of contract. However, once one moves beyond the basic task of identifying that legal theory, the claim as stated is plainly defective in a number of respects. The applicable pleading standards were summarized in *Acrymed, Inc. v. ConvaTek,* 317 F Supp 2d 1204, 1215, (D Or 2004) (applying Oregon law), as follows:

> "To state a viable claim for breach of contract, a plaintiff must allege: 1) the existence of a specific contract and the relevant terms; 2) the plaintiff's full performance of the contract; 3) defendant's breach of the contract; and, 4) damages to plaintiff resulting from the breach."

When the sparse allegations in Claim 6 are viewed in the fuller context of the entire Complaint and its attachments, however, it is reasonably clear that

plaintiff is claiming an entitlement to some form of health care insurance, ostensibly in relation to the treatment of his August 20, 2015 thumb injury.  Still, the George Fox Defendants contend that it is impossible for them or this court to evaluate the sufficiency of plaintiff's insurance-based breach of contract claim without knowing what specific insurance policy, if any, is at issue.  "Insurance policies are contractual in nature and are interpreted, for the most part, like any other business contract.    Their interpretation is a question of law * * *." *Employers Insurance of Wausau v. Tektronix, Inc.,* 211 Or App 485, 502-03, 156 P3d 105 (2007).  No court can perform that task, however, without a clear allegation regarding the nature of the contract or its operative terms.

In *Oregon Southwest, LLC v. Kvaternik,* 214 Or App 404, 414, 164 P3d 1226 (2007), the court not surprisingly confirmed the common-sense rule that "when a party has no legal obligation to perform a contract, that party cannot be liable for breach of that contract."  That basic rule is fully applicable here because the allegations found within Claims 2 and 3, along with the documents found at pages 28 and 29 of plaintiffs packet of supporting attachments, reveal that plaintiff's claim seems to originate from his attempts to claim benefits under an insurance policy, issued not by George Fox but by a non-party to this lawsuit, referred to in plaintiff's own writings as "AIG insurance company" or simply "AIG."

When so viewed, plaintiff's "breach of contract" claim against George Fox closely parallels those alleged by the plaintiff against one of the defendants in *Philips v. Clark County School District, et al,* 2011 WL 4343979 (D Nevada 2011).  There the plaintiff, after being severely injured in a high school football game, brought a direct claim for medical benefits against the issuing insurer[3] under a number of alternative theories, but also asserted the same claims against the defendant school district.

The insurer defendant in *Philips* then removed the case to federal court on diversity grounds, and in response to plaintiff's motion to remand both the insurer and the school district argued that the joinder of the school district was fraudulent and in bad faith, as the dispute was solely between the plaintiff and the insurer and there was no valid basis for any claim against the district.  The Nevada court expressly agreed that the complaint failed to state a breach of contract claim against the district, *id.* at *3, and because it similarly failed to state a claim under the plaintiff's other four theories, the attempted joinder of the school district was "fraudulent" for diversity purposes.  *Id.* at *5.

---

[3] At some point in this case, it will likely be revealed in a more concrete manner that the defendant insurer in *Phillips*, National Union Fire Insurance Company of Pittsburgh, PA, is actually the same company that issued the policy under which Mr. Wani claims to have been denied coverage, and that the references to "AIG" in plaintiff's correspondence are mistaken descriptions of a third party claims administration company.

Similarly, in *Denton v. International Health & Life,* 279 Or 444, 528 P2d 546 (1974), the court squarely addressed the question of who was entitled to sue the defendant insurer for medical benefits allegedly owed under a group policy issued to the plaintiff's employer.  However, because the specific expenses at issue were incurred solely in the treatment of the plaintiff's minor son, the court held that "the son must be the 'insured person' referred to in [the subject policy] * * * and, as such, is the only party entitled to bring an action with respect to the applicable coverage of the defendant's policy."  *Id.* at 415.  More importantly, the plaintiff's employer, presumably the named insured under the policy, was not even named as a defendant in that action, as the insurer alone was sued for recovery of the benefits at issue.

## MOTION NO. 5

(striking references to 20 USC § 1703, involving
discrimination in public schools)

The George Fox Defendants additionally move the court for an order, pursuant to Fed. R. Civ. P. 12(f)(2), striking all references to 20 USC § 1703 from the Complaint, and any related references to statutes prohibiting discrimination in public schools.

/ / /

/ / /

/ / /

**Supporting Legal Memorandum**

A.   <u>Introductory Arguments in Support of all Motions to Strike.</u>

Motion No. 5, and each of the following motions to strike, are all directed in large part to allegations and/or statements appearing on page 7 of plaintiff's *pro se* Complaint form.  While they have been intended by plaintiff solely as a basis for invoking "Federal Question" jurisdiction, as indicated by the heading under which they appear, in a number of respects plaintiff's individual claims for relief and supporting allegations seem to rely upon the same statutes or statutory prohibitions.

As so viewed, those statutory citations could easily be ignored by this court in the absence of a direct challenge to this court's jurisdiction.  However, since the George Fox Defendants have not moved for outright dismissal with prejudice of all of plaintiff's individual claims or his Complaint as a whole, and particularly in light of the comparatively lenient treatment afforded *pro se* plaintiffs in their first attempts to file a legally-sufficient complaint, it seems safe to assume that at least some of the claims in this case will survive this initial set of Rule 12 motions.

In the interim, plaintiff has indicated a desire to promptly move ahead with formal discovery, the George Fox Defendants plan to commence formal discovery of their own, and there is a distinct possibility that one or more of

plaintiff's individual claims for relief will soon be the subject of early motions for summary judgment, due to their lack of factual merit.  In all of those contexts, the George Fox Defendants contend that the court and the parties will all be well served by the early and decisive elimination of legal theories and federal statutes that clearly don't belong in this case, in any context.  And, due to plaintiff's utter refusal to voluntarily withdraw his reliance upon the following statutes, the following set of motions was deemed to be an appropriate mechanism for the narrowing of the issues early on in this case.

      B.    <u>Specific Arguments in Support of Motion No. 5.</u>

As is made clear by the introductory provisions found in 20 USC § 1701(a)(1), the related statute cited in the Complaint, specifically § 1703, is intended to address racial segregation in <u>public schools</u> only.  That is why it begins with the words "No <u>State</u> shall deny equal educational opportunity to an individual on account of his or her race * * *."  However, because plaintiff does not allege and could not allege in good faith that George Fox is a state-run rather than a purely private university, neither George Fox nor any of its employees would be considered a "state" covered by the prohibitions in §1703, nor would they constitute a "local educational agency" or "state educational agency" as defined in §1720.  In short, 20 USC §1703 simply does not apply to any of the

claims or facts alleged in the Complaint, and any reference to that statute should be stricken with prejudice.

## MOTION NO. 6

(striking all references to 42 USC § 2000a,
involving public accommodations)

The George Fox Defendants next move the court for an order, pursuant to Fed. R. Civ. P. 12(f)(2), striking all references to 42 USC § 2000a from the Complaint, and any related references to statutes prohibiting discrimination in places of public accommodation.

### Supporting Legal Memorandum

The "public accommodation" statute cited in the Complaint, 42 USC § 2000a, is also inapplicable to George Fox and its employees in connection with plaintiff's status as a former student and member of the football team.  A "place of public accommodation," as used in the statute, generally means a business held open to the public, such as a store, restaurant, motel, or one of the other types of establishments listed in subsections (b)(1) through (4) of §2000(a). Subsection (e) of the statute also clearly states that "The provisions of this subchapter shall not apply to a private club or other establishment not in fact open to the public * * *."

In an instructive case decided by this court, *C.O. v. Portland Public Schools,* 406 F Supp 2d 1157, 1172 (D Or 2012), it was held that Oregon's

Page 30 – GEORGE FOX DEFENDANTS' RULE 12 MOTIONS AGAINST COMPLAINT

parallel "public accommodation" statutes simply do not apply to schools, even public schools, in that "schools are not places of public accommodation."  The supreme courts of Illinois and Kansas have similarly held that those states' respective statutes prohibiting discrimination in places of public accommodation do not apply to public schools. *Board of Trustees v. Dept. of Human Rights,* 159 Ill. 2d 206, 636 NE 2d 528 (1994); *Kansas Comm. on Human Rights v. Topeka Unified School Dist.*, 243 Kan 137, 755 P2d 539 (1988).

And, while some federal statues expressly include sections allowing a private citizen to file a lawsuit seeking money damages for injuries allegedly caused by a violation, the enforcement provisions of 42 USC §2000a-3, do not. Accordingly, because the public accommodation statues simply do not apply to plaintiff's claims against the George Fox Defendants, and plaintiff would not have a right to sue for damages based on alleged violations of the statue if it did apply, any related allegations should be stricken from the Complaint.

### MOTION NO. 7

(striking all references to "health care fraud" and 18 USC § 1347)

The George Fox Defendants next move the court for an order, pursuant to Fed. R. Civ. P. 12(f)(2), striking all references to 18 USC § 1347 from the Complaint, and any related references to criminal statutes ostensibly prohibiting "health care fraud."

## Supporting Legal Memorandum

This motion is addressed to another federal statute referenced in the Complaint, but which clearly does not apply to this case. As the headings of the attached statute make clear, 18 USC §1347 is a <u>criminal</u> statute, meaning that only the United States Attorney or similar law enforcement agency has the authority to enforce it. Private citizens such as the plaintiff in this case simply do not have standing to prosecute or bring civil lawsuits seeking money damages for alleged violations of federal criminal statutes. Any references to 18 USC § 1347 should therefore be stricken from the Complaint with prejudice.

## MOTION NO. 8

(striking all references to the False Claims Act and 31 USC §3729)

The George Fox Defendants next move the court for an order, pursuant to Fed. R. Civ. P. 12(f)(2), striking all references to 31 USC § 3729 from the Complaint, along with any related references to the federal False Claims Act or its individual sections.

## Supporting Legal Memorandum

While 31 USC §3729 is admittedly a part of the "False Claims Act," both that specific statute and the Act as a whole apply only to "claims" made <u>to</u> the United States government for payment. Plaintiff's Complaint does not allege, and the George Fox Defendants contend that plaintiff could not allege in good

faith, that any of them ever made a "claim" to the United States government for payment in connection with plaintiff's brief enrollment at the University.   Any references to that statute or other portions of the "False Claims Act" should therefore be stricken from the Complaint as well.

## MOTON NO. 9

(striking all references to 42 USC §1320d-6(a),
involving disclosure of personal health information)

The George Fox Defendants next move the court for an order, pursuant to Fed. R. Civ. P. 12(f)(2), striking all references to 42 USC §1320d-6(a) from the Complaint, and any related references to "HIPAA" statutes and regulations relating to the protection or dissemination of private health information.

### Supporting Legal Memorandum

As previously discussed in support of Motion No. 3, the statute at issue in this motion to strike, like the one discussed in Motion No. 7, is another criminal statute that plaintiff, as a private citizen, simply does not have the right to allege as the basis of a civil claim for money damages.   It should therefore be stricken with prejudice pursuant to Rule 12(f) because the law simply does not give plaintiff the right to prosecute such a claim.

/ / /

/ / /

/ / /

Page 33 – GEORGE FOX DEFENDANTS' RULE 12 MOTIONS AGAINST COMPLAINT
Z:\CLIENTS\8000\8700.028 - WANI V. GEORGE FOX\PLEADINGS CASE # 1011\RULE 12 MOTIONS AGAINST COMPLAINT.DOC

## MOTION NO. 10

(striking all references to 41 USC § 6503 or "required contract terms")

The George Fox Defendants next move the court for an order, pursuant to Fed. R. Civ. P. 12(f)(2), striking all references to 41 USC § 6503 from the Complaint, and any related references to federal statutes addressing the content or performance of commercial contracts with the federal government itself.

### Supporting Legal Memorandum

The statute at issue in this motion applies only to contracts with the United States government, but no such contracts are described anywhere in the Complaint or its attachments. As further stated in 41 USC § 6502, these statues apply only to: "A contract made by an agency of the United States for the manufacture or furnishing of materials, supplies, articles, or equipment, in an amount exceeding $10,000 * * *." Again, plaintiff nowhere alleges that George Fox or any of the employee defendants were ever involved in such business activities, or that plaintiff's brief enrollment at George Fox involved any such contracts. As a result, those allegations should also be stricken from the Complaint with prejudice.

/ / /

/ / /

/ / /

**MOTION NO. 11**

(striking all references to 42 USC §1983 or
other "equal protection" provisions)

The George Fox Defendants next move the court for an order, pursuant to Fed. R. Civ. P. 12(f)(2), striking all references to 42 USC §1983 from the Complaint, and any related references to statutes ostensibly prohibiting or addressing "equal protection" violations by governmental entities.

### Supporting Legal Memorandum

The familiar "equal protection" provisions of 42 USC § 1983 apply solely to civil rights violations allegedly committed through the official *government* action of "a State or Territory or the District of Columbia."  Here again, plaintiff does not specifically allege and could not allege in good faith that George Fox or any of the employee defendants are governmental entities potentially subject to the provisions of §1983, and so any references to that statue should be stricken from the  Complaint as well.

### MOTION NO. 12

(striking all references to "Title IX")

The George Fox Defendants finally move the court for an order, pursuant to Fed. R. Civ. P. 12(f)(2), striking all references to federal "Title IX" statutes from the Complaint and any related references to sexual discrimination in educational programs.

## Supporting Legal Memorandum

As briefly discussed in footnote 2, at page 8, above, the group of federal statues commonly referred to as "Title IX," including 20 USC §1681, are intended to prohibit sexual discrimination in college and higher education programs, specifically discrimination against women.    Plaintiff's Complaint and its attachments, however, confirm that he was a man while attending George Fox, and nowhere purports to claim that he was discriminated against based on sex. The court should therefore strike any misplaced references to Title IX in the Complaint, particularly where plaintiff repeatedly makes clear that he is only alleging discrimination based on his race.

**DATED** this 28th day of September, 2017.

### THE RICKLES LAW FIRM, PC


By:    _____/s/  Martin W. Jaqua_____
         Stephen P. Rickles,  OSB #793613
         steve@rickles-law.com
         Martin W. Jaqua, OSB #860528
         mjaqua@rickles-law.com
         Attorneys for the George Fox Defendants

## CERTIFICATE OF COMPLIANCE

This set of Rule 12 motions complies with the applicable word-count limitation under LR 7-2(b) because it contains 7,925 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

By: _____ */s/ Martin W. Jaqua* _____

Stephen P. Rickles, OSB #793613
steve@rickles-law.com
Martin W. Jaqua, OSB #860528
mjaqua@rickles-law.com
Attorneys for the George Fox Defendants

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I served the foregoing **GEORGE FOX DEFENDANTS' RULE 12 MOTIONS AGAINST COMPLAINT** on the following parties on the 28th day of September, 2017, by:

☑ Mail to plaintiff – placed in a sealed envelope with postage prepaid, deposited in the U.S. Mail at Portland, Oregon
☑ Electronic service pursuant to LR 5-1
☐ Hand delivery
☐ Facsimile transmission
☐ Overnight delivery

I further certify that said copy was served as indicated above and addressed to said attorneys at the addresses listed below:

*VIA MAIL TO:*
Samuel Wani
PO Box 7548
Covington, WA  98042
   Email: samuelwani@eagles.ewu.edu
*Plaintiff pro se*

Michael J. Wiswall
Hart Wagner, LLP
1000 SW Broadway, Suite 2000
Portland, OR  97205
   Fax: 503.222.2301
   Email: mjw@hartwagner.com
*Of Attorneys for Defendant*
*Thomas Croy, MD*

Sheri C. Browning
Brisbee & Stockton, LLC
139 NE Lincoln Street
PO Box 567
Hillsboro, OR  97123
   Fax: 503.648.1091
   Email: scb@brisbeeandstockton.com
*Of Attorneys for Defendant*
*Providence Medical Group*

Dominick E. Fix-Gonzalez
437 West Olive Street, #3
Ingelwood, CA  90301
   Email: dfixgonzalez13
       @georgefox.edu
*Defendant pro se*

By: _____*/s/  Martin W. Jaqua*_____
        Martin W. Jaqua, OSB #860528
        mjaqua@rickles-law.com
        Attorneys for the George Fox Defendants