UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SAMUEL W. WANI,

         Plaintiff,

    v.

GEORGE FOX UNIVERSITY; PROVIDENCE
MEDICAL GROUP; DR. THOMAS CROY,
M.D.; DOMINIC FIX-GONZALEZ; GREGG
BOUGHTON; CHRIS CASEY; JOHN BATES;
IAN SANDERS; GABE HABERLY; CRAIG
TAYLOR; DAVE JOHNSTONE; MARK
POTHOFF; and SARAH TAYLOR,

         Defendants.

Case No. 3:17-cv-01011-YY

FINDINGS AND
RECOMMENDATIONS

YOU, Magistrate Judge:

## INTRODUCTION

Plaintiff, Samuel Wani ("Wani"), proceeding *pro se*, filed this case on June 29, 2017.

Wani alleges various claims against George Fox University ("GFU"), nine GFU employees

(collectively with GFU, "the GFU defendants"), including the Dean of Students (Mark Pothoff),

the Associate Dean of Students (Dave Johnstone), an administrative employee (Sarah Taylor),

six individuals employed in various capacities with GFU's Athletic Department (Gregg

Boughton ("Boughton") (GFU's Head Football Athletic Trainer), Chris Casey ("Casey") (Head

1 – FINDINGS AND RECOMMENDATIONS

Coach, Defensive Line), John Bates (Defensive Coordinator), Ian Sanders (Special Teams

Coordinator), Gabe Haberly (Wide Receiver Coordinator), and Craig Taylor (Director of

Athletics)), Providence Medical Group ("Providence"),[1] an orthopedic surgeon (Dr. Thomas

Croy ("Dr. Croy")), and one of Wani's former GFU football teammates (Dominic Fix-

Gonzalez).

Wani alleges that this court has federal question jurisdiction under 28 U.S.C. § 1331, and

cites a host of federal statutes.  Complaint 6-7, ECF #1.  He also alleges that he is a citizen of

Washington and that several defendants are from Oregon, seeks $70 million in damages, and

invokes jurisdiction based on diversity of citizenship under 28 USC § 1332.  Complaint 7-8, ECF

#1.  Now before the court are the GFU defendants' Rule 12 Motions Against the Complaint

("GFU Defs. Mot.") (ECF #52).  The GFU defendants seek to have all but the fourth of the six

enumerated claims alleged by Wani against them dismissed (Motions 1 through 4), and to strike

all references in the pleadings to eight federal statutes or statutory compilations (Motions 5

through 12).  For the reasons that follow, the motions should be granted.

## FINDINGS

### I.    Motions to Dismiss Under FRCP 12(b)(6)

#### A.    Enumerated Claims

Wani separately sets out six claims premised on various legal theories, including:

(1) "Cyberbullying, racial verbal harassment" ("First Claim"); (2) "Discrimination, medical false

---

[1] On September 28, 2017, Wani voluntarily dismissed all claims against Providence.  ECF #53.
In a case filed about a month later, Wani again sued four of the same defendants named in this
case, including Providence, alleging claims for "Gross / intentional Negligence" arising out of
the same allegations supporting the claims in this case.  However, on February 2, 2018, this court
dismissed that case.  *Wani v. Croy, et al.*, No. 3:17-cv-1192-YY, Order (ECF #35), adopting
Findings and Recommendation (ECF #32).

claim, fraud, negligence, and intentional infliction of  physical/emotional pain and suffering,"

now identified as "Negligence"[2] ("Second Claim"); (3) Medical fraud, negligence and refusal of

treatment," now identified as "Negligence" ("Third Claim"); (4) "Racial discrimination and

hatred" ("Fourth Claim"); (5) "Wrongful Disclosure of Individually Identifiable Health

Information  (HIPAA Violations)" ("Fifth Claim"); and (6) Breach of Contract ("Sixth Claim").

Complaint 9-11, ECF #1.  The GFU defendants seek dismissal of all claims against them under

FRCP 12(b)(6), with the exception of the Fourth Claim.

#### B.        Allegations of the Complaint and Factual Background

Wani's claims arise out of two series of interrelated events:  (1) one involving an injury

to Wani's thumb, and the alleged actions and inaction of the GFU defendants and Dr. Croy

related to that injury, and (2) another involving a social media post by Fix-Gonzalez and the

alleged actions and inaction of the GFU defendants related to that incident.  Wani's allegations

regarding his physical injury turn on events that transpired between August 20, 2015, when Wani

was hurt during football practice, and November 2016, when Wani had surgery to reconstruct a

torn thumb ligament.  Complaint 10, ECF #1.  His other allegations center on an August 27,

2015 social media post, and the response by GFU employees following Wani's report of the

incident about a week later.  As supplemented by the documents attached to Wani's Complaint,

the record reveals the following:

Wani's thumb was injured during football practice on August 20, 2015.  Wani alleges

that Boughton dismissed Wani's injury as a "booboo" that did not merit excusing him from

---

[2]  In the Complaint, the Second and Third Claims are titled, respectively, claims for
"Discrimination, medical false claim, fraud, negligence and intentional infliction of
physical/emotional pain and suffering" and "Medical fraud, negligence and refusal of treatment."
However, in his response to the GFU defendants' motion, Wani titles these claims "Negligence."
Complaint 9-10, ECF #1; Wani's Resp. 7-8, ECF #76.

3 – FINDINGS AND RECOMMENDATIONS

practice.  A week later, on August 27, 2015, Wani learned that Fix-Gonzalez had posted a picture

of him on social media comparing Wani's looks to that of a toilet mop, altering Wani's skin

color to be much darker ("making [him] so black that [he] looked burnt"), and including a

caption that he "had to make [Wani] extra crispy by giving [him] some extra vitamin D."

Complaint 9, ECF #1.  Fix-Gonzalez allegedly posted additional racial remarks after the post

with the picture.  *Id.*  After learning that his posts upset Wani, Fix-Gonzalez agreed to remove

them.  That evening, Casey called Wani to tell him that all the posts had been removed.  Other

than that, Casey basically advised Wani to "get over it" and that "[t]hings like that are going to

be said."  Complaint, Att. 1, at 8, ECF 1-1.  Following that conversation, Wani attended only one

practice and "felt like [he] didn't belong there."  *Id*.

Wani's thumb continued to bother him but Boughton continued to refuse to allow Wani

time off practice to have it examined or treated.  While dealing with the pain from his thumb

injury, Wani alleges he waited in vain for the coaches in GFU's athletic department to report

Fix-Gonzalez's social media posts to GFU's administration, leaving Wani in what he contends

was a racially hostile environment at school and on the football team.  On September 2, 2015,

about two weeks post-injury, Wani sought treatment and discovered that his thumb was

fractured, resulting in the end of his football season.  He withdrew from classes that same day.

Complaint, Att. 1, at 8, ECF #1-1 (describing course of events following his discovery of the

post by Fix-Gonzalez).

Two days later, on September 4, 2015, Wani reported the social media posts by Fix-

Gonzalez to GFU's Associate Dean of Students and Director of Residence Life, Dave Johnstone

("Johnstone").  Complaint, Att. A, at 1-3, ECF #1-1.  That same afternoon, Johnstone conducted

an "Investigation Meeting" with Wani.  *Id.* at 6-14.  Sarah Taylor took notes and Wani was

4 – FINDINGS AND RECOMMENDATIONS

accompanied by Mike Bujnowski. *Id*. at 6. Wani alleges that, during the investigation, Boughton falsely denied that he had refused Wani medical treatment and, since the investigation, Craig Taylor has refused to communicate with him except to taunt him and tell him that neither GFU nor its insurer, AIG, will pay for his injury. Complaint 9, ECF #1.

On September 18, 2015, Mark Pothoff, GFU's Dean of Community Life, issued a letter advising Wani of GFU's "community accountability" decision regarding the cyberbullying incident involving Fix-Gonzalez. Complaint, Att. A, at 1-3, ECF #1-1. Fix-Gonzalez lost his good standing with GFU, was required to write an apology letter to Wani, engage in cultural sensitivity training, and not post any further "lookalike" pictures on any social media. *Id*. at 1. Additional actions involving the football team were also outlined, but were to be handled by the athletics department. *Id*. at 2. Finally, with regard to Wani's thumb, the letter advised Wani that Boughton had no authority to deny anyone the ability to seek additional medical treatment, and that Boughton had spoken with Dr. Croy. *Id*.

Wani alleges that GFU and its Athletic Department personnel wrongfully refused him medical treatment, that GFU and its insurer improperly refused to pay for needed treatment, and that Dr. Croy, upon whose opinion GFU relied to refuse treatment, lied when he claimed to have examined Wani's thumb or x-rays. Wani seeks damages for past and future medical expenses related to his injured thumb, living expenses, loss of income and reduction in future earning capacity, and compensatory damages for emotional and physical suffering. Complaint, 8-11, ECF #1. Wani also seeks to have Boughton's Athletic Training License and EMT-B certification taken away and to have Dr. Croy's medical license taken away. Complaint 11, ECF #1.

///

5 – FINDINGS AND RECOMMENDATIONS

C.        Analysis

1.        First Claim—"Cyber bullying, racial verbal harassment"

In the First Claim, Wani alleges that the GFU defendants failed to report or adequately

respond to Fix-Gonzalez's Instagram postings, thereby subjecting him to a racially-hostile

environment at school and on the football team.  The GFU defendants contend that this claim

fails because nothing in Wani's allegations describes a sufficiently hostile educational

environment to support a race-based hostile environment claim and because, once Johnstone was

aware of the incident, he took immediate action and no further incidents are alleged to have

occurred.

A hostile environment claim requires a showing that the environment was one in which

racial harassment was so severe, pervasive, persistent, and objectively offensive that it deprived

the victim of access to the educational opportunities or benefits provided by the school.  *Davis v.*

*Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999); *Monteiro v. Tempe Union High Sch. Dist.*,

158 F.3d 1022, 1033 (9th Cir. 1998).

Wani's response to the GFU defendants' motion makes clear that this claim is premised

exclusively on two offensive Instagram posts by his teammate Fix-Gonzalez, a couple of

additional inflammatory comments by Fix-Gonzalez, along with a threat by Fix-Gonzalez to post

a third lookalike photo, the resulting teasing by his teammates, the failure of GFU's coaches to

immediately report the incident when Wani reported it, and Wani's dissatisfaction with the result

of GFU's investigation.  Pl.'s Resp. 1-7, ECF #76.  Nothing in the Complaint indicates that Fix-

Gonzalez engaged in any harassing conduct preceding the Instagram post, and he apologized and

removed the social media posts before Wani reported the incident to GFU athletic department

personnel.  Wani asserts that Fix-Gonzalez's conduct violated GFU policies and caused him

emotional harm.  Even accepting those assertions, however, does not bring Wani's claim within reach of an actionable hostile educational environment claim.  Hostile environment claims require allegations of an environment "permeated with discriminatory intimidation, ridicule, and insult."  *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 22 (1993) (citation omitted).  Wani's allegations simply do not rise to that level.

Wani alleges that Fix-Gonzalez's racially harassing Instagram postings went unreported by Casey and other GFU athletic department personnel for just over a week, at which time Wani himself reported the incident to Johnstone on September 4, 2015.  Johnstone initiated an investigation the same day Wani reported the incident.  A decision on Wani's complaint was issued two weeks later, but by that time, Wani had withdrawn from GFU and, shortly thereafter, moved out of Oregon.

The Supreme Court has clarified that a school administrator's response to peer-on-peer harassment is adequate if it is "not clearly unreasonable."  *Davis*, 526 U.S. at 649.  Here, Johnstone conducted an investigative interview on the same day Wani reported the incident. Unlike cases in which school administrators simply ignored harassing conduct, or took action that was completely ineffectual, GFU's administrators took immediate action, stripping Fix-Gonzalez of his good standing and mandating that he take actions to make reparations and increase his cultural sensitivity.

Thus, this court agrees with defendants that, as presently alleged, Wani's claim for race discrimination premised upon a hostile environment theory fails and should be dismissed. Accordingly, the GFU defendants' motion against the First Claim should be granted.

///

///

7 – FINDINGS AND RECOMMENDATIONS

### 2. Second and Third Claims—Negligence

In his Second and Third Claims, Wani recites various events surrounding his thumb injury. Wani alleges that Boughton refused to release him from football practice in order to have his injured thumb examined. He subsequently sought medical treatment two weeks later and learned his thumb was fractured. Wani also alleges that GFU refused to pay for necessary treatment. Wani ascribes a number of motives to the GFU defendants related to the failure to adequately address and pay for his injury, including their desire to: (1) prevent the need to discipline Fix-Gonzalez for his social media posts; (2) shield Boughton from discipline for "his role in refusing [Wani] treatment . . . and helping cover up [Wani's] injury;" (3) save GFU the expense of paying for Wani's medical bills; and (4) in the Fourth Claim, race-based discrimination. Complaint 9-10, ECF #1.

In his response to the GFU defendants' motion, Wani clarifies that the Second Claim is based on defendants' post-diagnosis conduct. Essentially, Wani contends that, once his fracture was diagnosed, several GFU defendants "collaborated" to ensure that Boughton would not get in trouble for refusing to let Wani get treated and ensure that GFU would not have to pay for Wani's thumb injury. The Third Claim, in contrast, centers on Boughton's refusal to allow Wani to leave practice to seek medical treatment in the first days or weeks after the injury.

Wani appears to assert a claim of deliberate indifference to medical needs, similar in nature to the type of claim typically asserted by a prison inmate against prison administrators. This court is aware of no authority that provides for such a claim by a student against a university and its staff. Similarly, this court is unaware of authority extending a special relationship sufficient to support a negligence claim by a student against a private university or its employees based on the failure to properly diagnose a student's medical condition. Moreover,

8 – FINDINGS AND RECOMMENDATIONS

as the GFU defendants correctly note, any negligence claim premised upon a misdiagnosis requires allegations of improper treatment resulting in injury to the plaintiff following the alleged misdiagnosis. *Willard v. Hutson*, 234 Or. 148, 165 (1963) (*en banc*). The Third Claim refers to removal of a tendon and reconstructive surgery on Wani's thumb, but does not specify how Wani believes those interventions were caused or exacerbated by the GFU defendants' alleged refusal to allow him time off of football practice to seek medical treatment. Absent allegations of such causation, these claims fail. Thus, for all of these reasons, the Second and Third Claims should be dismissed.

### 3. Fifth Claim—HIPAA Violations

In the Fifth Claim, Wani alleges that Taylor and Boughton shared his private health information, including the results of an x-ray with Dr. Croy, without Wani's written or verbal consent. Wani appears to be alleging a violation of 42 USC § 1320d-6(a), based on his citation to this statute in another portion of his Complaint and the lack of citation to any other provision that might encompass these allegations. Complaint 7, ECF #1. That provision is a criminal statute and, as such, provides no recourse to a private citizen. Thus, neither the specific statute cited by Wani, nor HIPAA more generally, allows for a private civil action for money damages. *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 n.4 (10th Cir. 2010) ("HIPAA does not create a private right of action for alleged disclosures of confidential medical information.") (citing *Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006)). Because there is no such cause of action, the Fifth Claim should be dismissed with prejudice.

### 4. Sixth Claim—Breach of Contract

In the Sixth Claim, Wani alleges that he "has a binding contract" with GFU, which states it will pay for all medical bills arising from injuries related to team-related activities supervised

by GFU staff.  He alleges, however, that GFU has refused to pay his medical bills related to his thumb injury.

Defendants are correct that Wani's Sixth Claim does not identify the contract on which he relies, nor does it identify any insurance policy that may be a source of payment for medical expenses arising from injuries to GFU football players during team activities.  Those details are critical to identifying the proper defendant and exact nature of Wani's claim for breach of contract:  "To state a claim for breach of contract, plaintiff must allege the existence of a contract, 'its relevant terms, plaintiff's full performance and lack of breach, and defendant's breach resulting in damage to plaintiff.'"  *Slover v. Or. State Bd. of Clinical Social Workers*, 144 Or. App. 565, 570 (1996) (quoting *Fleming v. Kids and Kin Head Start*, 71 Or. App. 718, 721 (1985)).  Here, Wani only alleges the existence of a contract in the most conclusory terms, leaving defendants and this court to speculate on the terms of the contract, as well as who might be proper defendant(s) regarding a breach of any such terms.  Accordingly, the Sixth Claim should be dismissed.

## III.    Motions to Strike

Wani cites various federal statutes as a the basis for this court's federal jurisdiction over his claims:  (1) 18 USC § 1347 ("Health care fraud"); (2) 20 USC § 1703 ("Denial of equal educational opportunity prohibited"); (3) 31 USC § 3729 ("False claims"); (4) 41 USC § 6503 ("Breach of violation of required contract terms"); (5) 42 USC § 1320d-6(a) ("Criminal violations"); (6) 42 USC § 1983; (7) 42 USC § 2000a; (8) Title IX ("Campus Discrimination"); and (9) Title VI of the Civil Rights Act of 1964, 42 USC § 2000d ("discrimination in public

schools because of race, color, or national origin").[3]  Complaint 7, ECF #1.  The GFU defendants

seek to strike references in the pleadings to all but one of those statutes.  For the reasons that

follow, these requests (Motions 5 through 12) should be granted.

### A.    Motion 5—20 USC § 1703

In Motion 5, the GFU defendants seek to strike all references to 20 USC § 1703, which

provides that "No State shall deny equal educational opportunity to an individual on account of

his or her race, color, sex, or national origin" by taking or failing to take six enumerated actions.

20 USC § 1703(a)-(f).  They also seek to strike any related references to discrimination in public,

as opposed to private, schools.

As defendants correctly point out, this statutory provision makes no mention of private

educational institutions.  Nor has Wani provided any authority for the proposition that this statute

applies to GFU or its employees on the grounds they fit under the umbrella of the definitions

found in 20 USC § 1720.  Accordingly, the GFU defendants request to strike all references to 20

USC § 1703 should be granted.

### B.    Motion 6—42 USC § 2000a

In Motion 6, the GFU defendants seek to strike all references to 42 USC § 2000a.  That

statute prohibits "discrimination or segregation on the ground of race, color, religion, or national

origin" in "any place of public accommodation."  The statute then identifies a variety of business

establishments that serve the public within the meaning of a "public accommodation."  42 USC §

2000a(b)(1)-(4).  Such establishments include hotels, motels, restaurants and other facilities

---

[3]  Wani also lists "360 Other Personal," "362 Personal Injury—Medical Malpractice," "375 False Claims Act," "440 Other Civil Rights," and "448 Education civil Rights," which are not federal statutes, but are various Nature of Suit codes from the court's Civil Cover Sheet (ECF #1-2). Complaint 7, ECF #1.  As administrative codes designed to aid the court in maintaining cases, and not federal statutes, these codes provide no basis for federal jurisdiction.

selling food for consumption on the premises, and theaters and similar places of exhibition or

entertainment. *Id*. The statute expressly "[does] not apply to a private club or other

establishment not in fact open to the public . . . ." 42 USC § 2000a(e). Nor does the statute

authorize a private action for damages. 42 USC § 2000a-3(a). In sum, nothing in the pleadings

indicates that GFU constitutes a "public accommodation" within the meaning of the statute, and

the enforcement provisions of the statute do not authorize the relief Wani seeks. Accordingly,

the GFU defendants' Motion 6 should be granted, and all references to 42 USC § 2000a should

be stricken from the Complaint, as well as any related allegations.

### C.    Motion 7—18 USC § 1347

In Motion 7, the GFU defendants seek to have all references to 18 USC § 1347 stricken.

Motion 7 should be granted because 18 USC § 1347, which pertains to health care fraud, is a

criminal statute. Nothing in the statute permits private enforcement or a claim for damages.

Accordingly, all references to 18 USC § 1347, and any related allegations regarding health care

fraud should be stricken.

### D.    Motion 8—31 USC § 3729

In Motion 8, the GFU defendants seek to strike all references to 31 USC § 3729. This

statute, which is part of the False Claims Act, prohibits false or fraudulent claims made to the

government, and creates liability to the United States for civil penalties and treble damages. 31

USC § 3729(a)(1). Nowhere does Wani allege that defendants made a false claim for payment to

the government. Instead, the only "false claim" referenced in the Complaint is the "medical false

claim" described in Claim Two, involving Wani's allegation that defendants made up a "fake x-

ray" and got a doctor to agree Wani wasn't hurt, so that GFU's coach would not face discipline,

and GFU could "save money on insurance by not paying . . . medical bills." Complaint 9, ECF

12 – FINDINGS AND RECOMMENDATIONS

#1. Those allegations simply do not fall within the scope of the statute. Accordingly, Motion 8 should be granted and all references to the False Claims Act and 31 USC § 3729 should be stricken.

### E. Motion 9—42 USC § 1320d-6(a)

In Motion 9, the GFU defendants seek to strike all references to 42 USC § 1320d-6(a). Once again, this is a criminal statute authorizing the imposition of fines and imprisonment, rather than a private right of action for money damages. Accordingly, Motion 9 should be granted and all references to 42 USC § 1320d-6 should be stricken.

### F. Motion 10—41 USC § 6503

Motion 10 asks that all references to 41 USC § 6503 be stricken. That motion is likewise well-taken, as 41 USC § 6503 pertains to the terms in a "contract made by an agency of the United States . . . in an amount exceeding $10,000." Wani's allegations make no mention of a contract with an agency of the United States. Instead, the only alleged contract at issue is the one between Wani and GFU identified in Claim Six. Thus, Motion 10 should be granted and all references to 41 USC § 6503 should be stricken from the Complaint.

### G. Motion 11—42 USC § 1983

In Motion 11, the GFU defendants seek to strike all references to 42 USC § 1983 and any references addressing alleged equal protection violations by governmental entities. A claim under § 1983 requires allegations of the deprivation "of a right secured by the Constitution and laws of the United States . . . by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). None of Wani's allegations in this case involve alleged actions by governmental actors. Accordingly, Motion 11 should be granted.

///

13 – FINDINGS AND RECOMMENDATIONS

**H.      Motion 12—Title IX ("Campus Discrimination")**

In Motion 12, the GFU defendants seek to strike all references to Title IX statutes.  Title IX of the Education Amendments of 1972, 20 USC § 1681(a), prohibits discrimination "on the basis of sex" in educational programs or activities receiving federal financial assistance.  Wani's claims in this case are based on race discrimination, not on race discrimination.  Complaint 9-10, ECF #1.  Accordingly, Motion 12 should also be granted and all references to Title IX provisions stricken.

## RECOMMENDATIONS

For the reasons stated above, GFU defendants' Rule 12 Motions Against the Complaint (ECF #52) should be granted.  Wani's First, Second, Third, Fifth, and Sixth Claims against GFU defendants should be dismissed, and the Fifth Claim in particular should be dismissed with prejudice.  All references to 18 USC § 1347; 20 USC § 1703; 31 USC § 3729; 41 USC § 6503; 42 USC § 1320d-6(a); 42 USC § 1983; 42 USC § 2000a; and Title IX should be stricken from the complaint.

## SCHEDULING ORDER

These Findings and Recommendations will be referred to a district judge.  Objections, if any, are due Thursday, March 08, 2018.  If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections.  When the response is due or filed, whichever date is earlier, the Findings and Recommendations will go under advisement.

///

///

14 – FINDINGS AND RECOMMENDATIONS

## NOTICE

These Findings and Recommendations are not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any Notice of Appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of a judgment.

DATED February 22, 2018.


/s/ Youlee Yim You

Youlee Yim You
United States Magistrate Judge