UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

SAMUEL W. WANI,

        Plaintiff,

    v.

GEORGE FOX UNIVERSITY; GREGG
BOUGHTON; and CHRIS CASEY,

        Defendants.

Case No. 3:17-cv-01011-YY

OPINION AND ORDER

YOU, Magistrate Judge:

    Plaintiff Samuel Wani ("Wani"), proceeding *pro se*, alleges various claims stemming from a hand injury he sustained during football practice at George Fox University ("GFU") in August 2015. In his original Complaint, Wani alleged claims against Dominick Fix-Gonzalez ("Fix-Gonzalez"), Dr. Thomas Croy ("Dr. Croy"), Providence Medical Group ("Providence"), GFU, and nine GFU employees, including Head Football Athletic Trainer, Gregg Boughton ("Boughton"), and Head Coach, Chis Casey ("Casey"), for: (1) "Cyberbullying, racial verbal harassment" (First Claim); (2) two claims of negligence, titled as claims for "Discrimination, medical false claim, fraud, negligence, and intentional infliction of physical/emotional pain and suffering" (Second Claim) and "Medical fraud, negligence and refusal of treatment" (Third Claim); (3) "Racial discrimination and hatred" (Fourth Claim); (4) "Wrongful Disclosure of

Individually Identifiable Health Information (HIPAA Violations)" (Fifth Claim); and (5) breach of contract (Sixth Claim). Compl. 9-11, ECF #1. He sought damages totaling over $70 million. *Id*. at 11.

On September 28, 2017, Wani voluntarily dismissed all claims against Providence. ECF #53. On April 5, 2018, this court granted GFU defendants' Rule 12 motion, and dismissed plaintiff's first, second, third, and sixth claims without prejudice, and plaintiff's fifth claim with prejudice. ECF #146. On November 15, 2018, on motion for summary judgment, this court dismissed all claims against defendants Fix-Gonzalez and Dr. Croy. ECF #209. This court also dismissed all claims against the individual GFU defendants, except that the court granted Wani's motion to file an amended complaint limited to personal injury claims against Boughton, Casey, and GFU. *Id.* Wani filed his amended complaint on December 3, 2018, and defendants filed a second motion for summary judgment on December 28, 2018. ECF #213. The court finds that this matter is suitable for decision without oral argument pursuant to LR 7-1(d)(1), and the motion for summary judgment is granted for the reasons discussed below.[1]

## STANDARDS

Under FRCP 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The party moving for summary judgment bears the initial responsibility of informing the court of the basis for the motion and identifying portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the

---

[1] As of December 3, 2018, all remaining parties have consented to allow a magistrate judge to enter final order and judgment in this case in accordance with FRCP 73(b) and 28 USC § 636(c). ECF #210.

moving party does so, the nonmoving party must "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citing FRCP 56(e)).

In determining what facts are material, the court considers the underlying substantive law regarding the claims. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Otherwise stated, only disputes over facts that might affect the outcome of the suit preclude the entry of summary judgment. *Id.* A dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Id.* at 248-49. A "scintilla of evidence" or "evidence that is merely colorable or not significantly probative" is insufficient to create a genuine issue of material fact. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000). The court "does not weigh the evidence or determine the truth of the matter, but only determines whether there is a genuine issue for trial." *Balint v. Carson City, Nev.*, 180 F.3d 1047, 1054 (9th Cir. 1999). "Reasonable doubts as to the existence of material factual issue are resolved against the moving parties and inferences are drawn in the light most favorable to the non-moving party." *Addisu,* 198 F.3d at 1134 (citation omitted).

## JURISDICTION

The only remaining claims are negligence claims, which are governed by Oregon law. This court has supplemental jurisdiction over those claims pursuant to 28 USC § 1367(c)(3). However, the court has discretion to keep the case, or decline to keep it, if the court has "dismissed all claims over which it has original jurisdiction." *Acri v. Varian Assocs., Inc.*, 114 F.3d 999, 1000 (9th Cir.), supplemented, 121 F.3d 714 (9th Cir. 1997), as amended (Oct. 1, 1997).

"Section 1367(c)(3) derives from [the Supreme Court's] admonition that '[n]eedless decisions of state law should be avoided.'" *Trustees of Constr. Indus. & Laborers Health & Welfare Tr. v. Desert Valley Landscape & Maint., Inc.*, 333 F.3d 923, 925-26 (9th Cir. 2003) (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)); *see also Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of the factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."). In exercising its discretion, the district court must "explain how declining jurisdiction serves the objectives of economy, convenience and fairness to the parties, and comity." *Trustees of Constr. Indus.*, 333 F.3d at 925.

"[A]ctually exercising discretion and deciding whether to decline, or to retain, supplemental jurisdiction over state law claims when any factor in subdivision (c) is implicated is a responsibility that district courts are duty-bound to take seriously." *Acri*, 114 F.3d at 1001. "Given the importance of these values in our federal system, the proper administration of justice is far better served by a deliberative decision than by default." *Id.*

The parties have not asked the court to remand this case to state court, and this court is not obligated to consider the issue where it has not been raised by the parties. *Id.* ("[W]hile a district court must be sure that it has federal jurisdiction under § 1367(a), once it is satisfied that the power to resolve state law claims exists, the court is not required to make a § 1367(c) analysis unless asked to do so by a party."). However, in this case, discovery has been completed and a number of dispositive motions have been decided. Given how far this case has

advanced, the most sensible way of accommodating the economics, convenience, and fairness of the parties is to resolve the remaining negligence claims in federal court.

## DISCUSSION

I.  **Previously Denied Claims and Motions**

In his response to defendants' motion for summary judgment, Wani dedicates significant sections of his brief to revisiting and rehashing issues that have already been resolved and are not properly before the court.  For example, Wani repeatedly insists that this court must re-evaluate the claims against Dr. Croy.  Pl. Resp. 2, 7, 14, ECF #219.  However, the court has already granted summary judgment on those claims.  *See* Opinion and Order 10, ECF #209.

Wani also argues it is necessary for the court to "bring back [the] formerly dismissed defendants . . . for a full resolution of this case."  Pl. Resp. 4-5, ECF #219.  Wani voluntarily dismissed all claims against Providence, and the claims against the other defendants—aside from Boughton, Casey, and GFU—were dismissed after full briefing and vetting of the issues.  *See* ECF #53; Opinion and Order 10, ECF #209.  As such, the claims against those former defendants have been fully resolved and cannot be resurrected.

Wani further contends that "there are still discoverable documents that relat[e] directly to the disputable material facts that the defendants have [and] are still withholding and further discovery is needed."  Pl. Resp. 4, ECF #219.  However, this issue too has already been resolved.  Wani filed a motion to compel on June 12, 2018, and on August 8, 2018, the motion was denied.  *See* Order 1-2, ECF #197.

Finally, Wani asserts that defendants and their counsel have all perjured themselves in this case.  Pl. Resp. 16, ECF #219.  However, he does not cite to any specific evidence in support

of his perjury allegations. Accordingly, the court will not further discuss Wani's unsupported claims of misconduct.

## II. Remaining Personal Injury Claims

### A. Boughton

Boughton was head football athletic trainer at GFU during the relevant time period. Boughton Decl. ¶ 1, ECF #214. Wani claims that Boughton was negligent in failing to properly diagnose and treat his thumb injury, send him to a doctor, and give him time off from practice so that his injury could heal. Second Am. Compl. 3-4, ECF #211. Wani contends that "no reasonable athletic trainer would [have] treat[ed] [his] injury the way Gregg Boughton treated [the] injury." *Id.* at 4.

Certain professional or contractual relationships may give rise to a tort duty to exercise reasonable care on behalf of another's interests. *Onita Pac. Corp. v. Trustees of Bronson*, 315 Or. 149, 160 (1992). Where there is a special relationship between the plaintiff and the defendant, the plaintiff usually must allege and prove (1) a duty that runs from the defendant to the plaintiff; (2) a breach of that duty; (3) a resulting harm to the plaintiff measurable in damages; and (4) causation, i.e., a causal link between the breach of duty and the harm. *Stevens v. Bispham*, 316 Or. 221, 227 (1993).

"In most charges of negligence against professional persons, expert testimony is required to establish what the reasonable practice is in the community." *Getchell v. Mansfield*, 260 Or. 174, 179 (1971). "The conduct of the defendant professional is adjudged by this standard. Without such expert testimony a plaintiff cannot prove negligence." *Id.* "The reason for this rule is that what is reasonable conduct for a professional is ordinarily not within the knowledge of the usual jury." *Id.*

Oregon courts have not determined whether or not there is a special relationship between athletic trainers and athletes. Even assuming a special relationship exists, Boughton has produced evidence that he met the standard of care of a reasonable athletic trainer in the community. *See Searles v. Trustees of St. Joseph's Coll.*, 1997 ME 128, ¶ 10, 695 A.2d 1206, 1210 (1997) (holding that "an athletic trainer . . . has the duty to conform to the standard of care required of an ordinary careful trainer"). And Wani has produced no expert testimony to refute it. *See id.* ("Athletic trainers are licensed by the State . . . and establishing the standard of care for these licensed professionals in their treatment of athletes ordinarily requires expert testimony."); *Georgia Physical Therapy, Inc. v. McCullough*, 219 Ga. App. 744, 745, 466 S.E.2d 635, 637 (1995) (holding plaintiff's failure to file an expert affidavit in response to motion for summary judgment mandated dismissal of claims against athletic trainer).

Boughton is a certified athletic trainer with more than 25 years of experience. Boughton Decl. ¶ 3, ECF #214. He has a bachelor's degree in exercise science, a master's degree in athletic administration, 33 additional hours of graduate-level credit in exercise and sports studies, and EMT-B certification. *Id.* He is a certified athletic trainer through the national Board of Certification, and also a certified strength and conditioning specialist through the National Strength and Conditioning Association. *Id.*

Boughton believes his initial assessment that Wani had only a sprain of the medial collateral ligament, his corresponding treatment plan, and the diagnostic procedures and techniques he used in evaluating Wani's injury were fully consistent with the standard of care utilized by reasonably prudent certified athletic trainers in Oregon. *Id*. at 7. In his defense, Boughton has submitted the declaration of Dale Isaak, the head athletic trainer at GFU. Decl. Isaak, ECF #217. Isaak has a master's degree in physical education and training and a master's

of education degree in physical education. *Id.* at ¶ 3. He is an assistant professor and director of GFU's Athletic Training Educational Program, which is part of the university's Department of Health and Human Performance. He also is vice chair of the State of Oregon's Board of Athletic Trainers, which oversees the practice of athletic trainers in Oregon and is part of the Oregon Health Authority's Health Licensing Office. *Id.* at ¶ 2.

Isaak reviewed Boughton's progress notes relating to Wani's left thumb injury. In Isaak's professional opinion, Boughton's initial impression that Wani suffered a sprain of the medial collateral ligament was fully consistent with Wani's reported subjective complaints and Boughton's objective and functional assessments. Isaak Decl. ¶ 13, ECF #157. Moreover, in Isaak's professional opinion, the diagnostic procedures and techniques that Boughton used and the treatment plan he formulated were fully consistent with the standard of care utilized by reasonably prudent certified athletic trainers in Oregon. Isaak Decl. ¶ 7-8, ECF #217. Isaak further explained the scenarios in which an athletic trainer would refer a student athlete to a physician, for example, where there was a visible deformity, joint instability, extreme pain, or loss of feeling. Isaak Decl. ¶ 11, ECF #157. Based on Boughton's proper assessment of Wani's thumb injury, Isaak agreed that the injury did not meet the standards for determining that a student athlete needed an immediate referral to a team doctor or private medical care provider. *Id.* at ¶ 14. The injury also did not "appear to have been the type of condition that, for a George Fox football player, would have warranted a decision by an athletic trainer to prohibit the player's participation in regular practices or games, much less recommend to the coaching staff that the player be excused from attending practices, team meetings, or games." *Id.*

Broughton also submitted a declaration by Dr. Gerald Broock, an orthopedic surgeon with over 50 years of experience. Broock Decl., ECF #215. Broughton does not offer Dr.

Broock's declaration to show that the standard of care for a certified athletic trainer is the same as that of an orthopedic surgeon; rather, he offers it to show that Broughton has met even the standard of care for orthopedic surgeons. Mot. Dismiss 29, ECF #213.

In Dr. Broock's professional opinion, Broughton "properly and correctly diagnosed plaintiff's left thumb injury as involving only a sprain of the ulnar collateral ligament ("UCL") upon his initial examination on August 20, 2015, and upon his four follow-up examinations, including the last one on August 27, 2015." Broock Decl. ¶ 6, ECF #215. Dr. Broock also opines that Broughton's "treatment plan, as reflected in his declaration and exhibits, was fully appropriate and consistent with his initial diagnosis of a Grade 1 sprain of the UCL and the conclusions reflected in the notes from his subsequent examinations of Mr. Wani's thumb." *Id.* ¶ 8. Dr. Broock goes on to conclude:

> Even though I have never been certified as an athletic trainer, it is also my opinion that a reasonably prudent and careful orthopedic physician, if confronted with a thumb injury having the same reported history, the same objective findings, and the same objective reports reflected in Mr. Boughton's notes, would have conducted the same diagnostic tests as Mr. Boughton and would have recommended an initial treatment plan virtually identical to that recommended by Mr. Boughton, at least within the first two weeks of the reported injury.

*Id*.

Thus, Boughton has submitted expert testimony—through Isaak and Dr. Broock, as well as his own declaration—that he met the standard of care of a reasonable athletic trainer in the community. Wani has offered no expert testimony to refute this evidence. Without expert testimony, a jury would be incapable of ascertaining whether Boughton's diagnosis and treatment was within the standard of care. *See Searles*, 1997 ME 128, ¶ 10 ("Athletic trainers are licensed by the State . . . and establishing the standard of care for these licensed professionals in their treatment of athletes ordinarily requires expert testimony."); *Georgia Physical Therapy*,

219 Ga. App. at 745 (holding that a plaintiff's failure to file an expert affidavit in response to motion for summary judgment mandated dismissal of claims against athletic trainer). Thus, there is no genuine issue of material fact regarding whether Boughton breached his duty, and he is entitled to summary judgment.

Additionally, Boughton is entitled to prevail on the issue of causation. Wani alleges that Boughton's actions "directly contributed to the rupture of [the] Ulnar Collateral Ligament of [his] left thumb." Second Am. Compl. 3, ECF #211. He contends that if Boughton had properly treated him or sent him to the doctor during the first week of the initial injury, it would have "minimized, prevented, or eliminated altogether" damage to his left thumb. *Id.*

Again, Wani offers no expert testimony to support this conclusion. "When the element of causation involves a complex medical question, as a matter of law, no rational juror can find that a plaintiff has established causation unless the plaintiff has presented expert testimony that there is a reasonable medical probability that the alleged negligence caused the plaintiff's injuries." *Baughman v. Pina*, 200 Or. App. 15, 18 (2005). Here, as defendants exhaustively explain in their motion, there is no such evidence; Wani saw seven doctors in the ten months following his initial injury and none of them diagnosed a problem with the UCL. Mot. Dismiss, 23-27, ECF #213. Additionally, in Dr. Broock's expert opinion, "Wani's initial August 20, 2015 thumb injury did not include a new or acute 'rupture' of the UCL. . . ." Broock Decl. ¶ 9, ECF #215.

Wani argues that, as the moving party, Boughton has the burden of proving that his treatment of Wani's injury was "better than" the treatment provided by Wani's doctors. Pl. Resp. 3, ECF #219. However, that is not the standard. Rather, when evidence is offered in support of a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing FRCP 56(e)). As a result of Wani's failure to provide expert testimony regarding the standard of care and causation, there is no genuine issue of material fact as to his claim against Boughton. Boughton is therefore entitled to summary judgment.

    **B.**     **Casey**

Casey is the head football coach at GFU. Casey Decl. ¶ 2, ECF #216. This court previously found that Wani had failed to "allege what duty of care is owed by a university football coach to his or her players, that Casey breached that duty, and how Casey breached that duty." Opinion and Order 8, ECF #209. In his second amended complaint, plaintiff alleges that Casey owed a duty to refrain from doing anything that would harm the athletes "physically, psychologically, emotionally, or mentally." Second Am. Compl. 4-5, ECF #211. Wani additionally alleges that Casey owed a duty to provide proper medical care, guarantee accessibility of appropriate first aid and medical care, and refrain from aggravating an athlete's injuries. *Id.* at 5. Wani claims that Casey breached this duty by misdiagnosing his thumb injury, preventing him from leaving practice, requiring permission before he could see a doctor, ordering Boughton to not let him see a doctor, and intentionally withholding treatment by failing to disclose that the team had a doctor. *Id.* at 4.

In support of his motion for summary judgment, Casey has submitted a sworn declaration in which he describes that prior to being hired as the head football coach at GFU in 2013, he was a coach for 31 years at another university, a college, and two high schools. Casey Decl. ¶ 3, ECF #216. Casey further explains that under current NCAA guidelines for all intercollegiate sports teams, coaches are required to defer to the expertise of athletic trainers, team doctors, and outside medical providers on all issues regarding student-athlete injuries and medical conditions. *Id.* ¶ 7.

Casey has included a copy of the relevant NCAA guidelines, which he contends require coaches in NCAA affiliated schools, like GFU, to grant medical professionals compete independence in evaluating and treating student-athlete injuries, and generally prohibit coaches from interfering with, second-guessing, or overriding injury diagnoses, treatment plans, or recommendations about an athlete's ability to participate in organized team activities. *Id.* Casey attests that he has "strictly followed those guidelines throughout [his] employment" at GFU. *Id.*

Indeed, the NCAA publication that Casey has included as an exhibit, which is entitled "Independent Medical Care for College Student-Athletes Best Practices," provides that "[d]iagnosis, management and return-to-play determinations for the college student-athlete are the responsibility of the institution's primary athletics health care providers (team physicians and athletic trainers)," and "[t]he unchallengeable, autonomous authority of primary athletics health care providers to determine medical management and return-to-play decisions becomes the linchpin for independent medical care of student-athletes." ECF #216, at 3, 4. "Decisions that affect the current or future health status of a student-athlete who has an injury or illness should only be made by a properly credentialed health professional (e.g., a physician or an athletic trainer who has a physician's authorization to make the decision)." *Id.* at 4.

Wani has provided no expert testimony to refute Casey's testimony that the standard of care for coaches is to defer to independent medical health care providers for diagnosis, treatment, and decisions regarding returning to play. He also has failed to produce any expert evidence to establish that Casey's negligence caused his injury. Because there are no genuine issues of material fact as to the claim against Casey, summary judgment must be granted.

### C. GFU

Wani alleges that GFU is vicariously liable for Boughton and Casey's actions under the doctrine of respondeat superior. However, given that the claims against Casey and Boughton fail, GFU has no vicarious liability.

Wani also alleges that GFU was negligent in hiring, retaining, training, and supervising Boughton and Casey. Negligent hiring claims are claims of direct liability, distinguishable from those based on a theory of vicarious liability and must be separately analyzed. *See*, *e.g.*, *Doe ex rel. Christina H. v. Medford Sch. Dist. 549 C*, No. 10-3113-CL, 2011 WL 1002166, at *8 (D. Or. Feb. 22, 2011) (describing the plaintiffs' claim seeking to impose liability on the defendant for negligently supervising an employee as a claim of direct liability for negligent supervision, not vicarious liability), findings and recommendations adopted, 2011 WL 976463 (D. Or. Mar. 18, 2011). "However, as explained in regard to this issue in the context of the IIED/NIED and fraud claims, should the personal injury claims against the individuals fail, the direct liability negligent supervision type claim against GFU cannot survive because, as a matter of law, there would be no causation." Opinion and Order 9 n.3, ECF #209. Because, as discussed above, the negligence claims against Boughton and Casey fail, summary judgment is granted on the negligent hiring claims against GFU.

### III. Leave to Amend

In his response to defendant's Motion for Summary Judgment, Wani asks for leave to amend, arguing that "the court should freely grant [him] a 3rd amendment to [his] complaint in the following [proposed] amended complaint and immediately rule on the pleadings in [his] favor without any need for further litigation." Pl. Resp. 16, ECF #219.

In evaluating the propriety of granting leave to amend, courts are directed to consider five factors, including bad faith, undue delay, prejudice to the opposing party, futility of the amendment, and whether there have been previous amendments. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011). "Leave to amend is warranted if the deficiencies can be cured with additional allegations that are consistent with the challenged pleading and that do not contradict the allegations in the original complaint." *Id.* (internal quotation marks and citation omitted). However, denial of leave to amend is proper if the court "determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (internal quotation marks and citation omitted).

Here, Wani's previous motion for leave to file a second amended complaint was already denied in part, and to the extent it was granted, it was limited to personal injury claims against Boughton, Casey, and GFU. Opinion and Order 10, ECF #209. Moreover, in both this court's Findings and Recommendations and Judge Hernandez's Opinion and Order, it was explained that Wani would not be able to prevail on his negligence claims without expert testimony. Findings and Recommendations 16, ECF #198; Opinion and Order 7, ECF #209. Despite having been informed of the need for expert testimony, Wani has failed to provide any such evidence.

Wani's second amended complaint already alleged the only claims allowed pursuant to Judge Hernandez's order, and those claims have failed, not because they were not properly alleged, but because there are no genuine issues of material fact. Given that Wani's claims fail under summary judgment and Wani has not indicated how he would amend the complaint, it appears amendment would be futile. *See Burdett v. Reynoso*, 399 Fed. App'x 276, 278 (9th Cir. 2010) ("[A] motion for leave to amend is not a vehicle to circumvent summary judgment.") (citations and internal quotations omitted) (cited pursuant to Ninth Circuit Rule 36-3).

Additionally, further amendment to the pleadings would result in undue delay and unfair prejudice to defendants. Therefore, Wani's request for leave to file a third amended complaint is denied.

## CONCLUSION

The Second Motion for Summary Judgment (ECF #213) is GRANTED, and all remaining claims against Boughton, Casey, and GFU are dismissed with prejudice. This case is dismissed and judgment shall be entered to that effect.

DATED March 25, 2019.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge